**PERRY ROOFING COMPANY, Petitioner,**

v.

**Eugene D. OLCOTT, Respondent.**

No. C–6228.

Supreme Court of Texas.

Feb. 10, 1988.

Rehearing Denied March 16, 1988.

S.C. Cocanower, Cocanower, Barnhart & Robbins, Fort Worth, for petitioner.

Laurance L. Priddy, Leeper, Priddy & Chovanec, Fort Worth, for respondent.

MAUZY, Justice.

This case involves prejudgment interest. Perry Roofing Company installed a new roof for Eugene D. Olcott. The roof leaked. Olcott sued Perry not only for the cost of replacing the roof itself but also for the cost of repairing the damage done to the interior of his home. The jury found that the damage was caused by the roof's improper installation and awarded Olcott $15,000.00 in damages. The damages included the replacement value of the roof as well as the cost of repairs to the interior of Olcott's home. The trial court rendered judgment on the jury's verdict and awarded prejudgment interest at the rate of six percent pursuant to Tex.Rev.Civ.Stat.Ann., art. 5069–1.03. The court of appeals affirmed the trial court's judgment except in its award of prejudgment interest. The court of appeals awarded prejudgment interest at the rate of ten percent in accordance with Tex.Rev.Civ.Stat.Ann., art. 5069–1.05. 722 S.W.2d 538. We affirm the judgment of the court of appeals.

By its express terms, the statutory prejudgment interest rate set forth in article 5069–1.03 applies only to "accounts and contracts ascertaining the sum payable." Although we have liberally construed this provision, we have at least required that the contract provide the conditions upon which liability depends and that it fix "a measure by which the sum payable can be ascertained with reasonable certainty." *La Sara Grain Co. v. First National Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex.1984); *Federal Life Insurance Co. v. Kriton*, 112 Tex. 532, 249 S.W. 193, 195 (1923). The contract between Perry Roofing and Olcott contains no measure by which a sum payable could be ascertained for damages resulting from Perry Roofing's failure to properly install the roof. Therefore, article 5069–1.03 cannot provide the basis for awarding prejudgment interest to Olcott.

Article 5069–1.03 is not, however, the only possible basis for an award of prejudgment interest. This court has also awarded prejudgment interest based on equity. This court held in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985) that equitable prejudgment interest would be awarded in personal injury and wrongful death cases and that the rate for equitable prejudgment interest would be the same as the rate of interest on judgments as set out in Tex.Rev.Civ.Stat. Ann. art. 5069–1.05.

In *Cavnar*, this court pronounced two main policy reasons for allowing injured victims and survivors to recover prejudgment interest under the prevailing market rate set forth in article 5069–1.05: to encourage settlements and to discourage delay. These policy reasons are also applicable in a case such as this in which the amount of damages is not ascertainable from the face of the contract.

Perry Roofing relies upon *Missouri–Kansas–Texas Railroad Co. v. Fiberglass Insulators*, 707 S.W.2d 943 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), to support its contention that all contractual claims are limited by the six percent statutory rate of article 5069–1.03. That reliance is misplaced. *Fiberglass Insulators* involved a claim for contractual damages that were clearly ascertainable from the face of the contract; therefore, the issue of unascertainable damages was not presented because the case was governed by article 5069–1.03. The court of appeals in *Fiberglass Insulators* cited with approval several decisions rendered before *Cavnar*. Cases decided prior to *Cavnar* may

indicate that the six percent rate available under article 5069–1.03 is the maximum legal rate of prejudgment interest. However, *Cavnar* provides, "[t]o the extent that other cases conflict with this holding, they are overruled." 696 S.W.2d at 554.

As the most recent decision by this court, *Cavnar* prevails over those cases that conflict with an award of prejudgment interest in excess of six percent. Therefore, the court of appeals correctly decided to extend this court's holding in *Cavnar* and apply its rationale to a breach of contract action for unascertainable damages. As in *Cavnar*, the availability of properly pleaded prejudgment interest for unascertainable or unliquidated contractual damages is prospective, applying to all future cases and those presently in the judicial process. *See Benavidez v. Isles Construction Co.*, 726 S.W.2d 23 (Tex.1987); *Vidor Walgreen Pharmacy v. Fisher*, 728 S.W.2d 353 (Tex. 1987).

We affirm the judgment of the court of appeals.

WALLACE, J., dissents with opinion joined by PHILLIPS, C.J., and GONZALEZ, J.

CULVER, J., not sitting.

WALLACE, Justice, dissenting.

I respectfully dissent.

The trial court applied the correct rate of prejudgment interest. Article 5069–1.03, TEX.REV.CIV.STAT.ANN. applies to *all* contract cases in which the contract is silent on prejudgment interest.

The public policy reasons we enunciated in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985), are inapplicable in contract actions. *Cavnar* revised the prejudgment interest rule in personal injury, survival, and wrongful death cases to compensate the injured victim for money withheld and to expedite settlements and trials.

Olcott was not a "victim" of a contract breach. A "victim" is "[t]he person who is the object of a crime or tort, as the victim of a robbery is the person robbed." BLACK'S LAW DICTIONARY, p. 1405 (5th ed. 1979). Victims have no prior dealings, no prior agreements, no meeting of the minds. They do not select their defendants. Conversely, parties to contracts engage in a bargained-for exchange; an arm's length transaction in which they may contractually provide for prejudgment interest on liquidated damages.

Unlike personal injury, survival, and wrongful death cases, suits on contracts often involve counterclaims. Contract actions are generally bona fide disputes between parties who choose to do business. The parties have the ability to negotiate the terms of their agreements in advance; indeed, they have the freedom to choose whether to contract. Further, it is important to contracting parties that they be able, in advance, to determine the full extent of their contractual rights and obligations. If the contract does not provide for prejudgment interest, then it is presumed the parties intended the statutory interest rates to apply. These elements are not present in the personal injury context. Tort victims have no prior opportunity to negotiate the terms by which they will be compensated.

In *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.1978), we stated that the rate allowed as equitable prejudgment interest was to be the legal rate of interest, *i.e.*, the rate established by art. 5069–1.03, or its predecessors. Further, we approved the language of *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897), in which this court, in applying the legal rate of interest to an equitable interest situation said: "... the courts have, by analogy, adopted the legal rate of interest fixed by statute as the standard by which to be governed in assessing damages for the detention of money."

In *Cavnar*, we stated that it was "both necessary and appropriate for us to modify this [personal injury, survival, and wrongful death] area of the law in order to elimi-

nate the existing inequities." 696 S.W.2d at 556. The court's opinion points out one of the inequities of its holding. Had Olcott refused to pay the contract price, damages would be ascertainable and, therefore, subject to the prejudgment interest provided under art. 5069–1.03. It is unfair to hold one party in a bona fide dispute to a higher rate of prejudgment interest than the other. If the damages arising from a party's breach of contract are reasonably ascertainable, that party has an opportunity to compensate the other party when notified of breach, before interest on the sum due begins to accrue. If, however, the amount is *not* ascertainable, the party charged with a breach has no opportunity to discharge its obligation. It is difficult to conclude that the latter party, with no ascertainable damage claim against which a deposit may be made, should suffer a higher rate of prejudgment interest than a party to a contract in which damages are readily ascertainable. There is no reason why a prevailing party in such a contract action should receive a prejudgment interest award at a rate in excess of that determined by the Legislature in art. 5069–1.03.

In effect, the court's opinion states that it was our intention in *Cavnar* to overrule prior cases which held that the six percent rate available under art. 5069–1.03 is the maximum legal rate of prejudgment interest in all cases where the damages are unascertainable or unliquidated. The opinion misinterprets *Cavnar*. The *Cavnar* opinion dealt with personal injury, survival and wrongful death cases for which no prejudgment interest had theretofore been permitted. The conflicting cases referred to and overruled in *Cavnar* were cases denying prejudgment interest in personal injury, survival and wrongful death cases only. The court takes unwarranted liberty in extending the holding in *Cavnar* to cases such as this one.

The Legislature has given contracting parties notice that if they enter into and subsequently breach agreements in which damages are liquidated or otherwise ascer-

tainable, they may be held liable for prejudgment interest. Parties to contracts have always had this corresponding obligation and right, and the law provides that, if the parties do not contract otherwise, the rate shall be six percent. If no alternate rate is agreed upon, it will be presumed the parties contemplated and intended that the statutory rate apply, since the law in existence at the time the parties entered into the agreement becomes a part of the contract itself. *Hardware Dealers Mutual Insurance Co. v. Berglund*, 393 S.W.2d 309, 315 (Tex.1965).

Furthermore, the court's opinion is prospective, applying to all future cases and those presently in the judicial process. This court is creating just as much a wrong by imposing a nonconsensual interest rate which applies to all current contracts which, necessarily, did not contemplate today's holding at the time the contract was made. Public policy would best be served by continuing to allow parties to future contracts to stipulate an interest rate to be paid upon breach by either party and, if no agreement is made, to allow the legal statutory rate to apply.

PHILLIPS, C.J., and GONZALEZ, J., join in this dissent.